Good morning. Good morning. May it please the Court, I'm John Jordan, representing Appellant Susan Su in this criminal appeal. Your Honors, I'll start my first point with the appeal of the Rule 29 motion, and I'd like to focus on the convictions of the two counts for harboring illegal aliens. The two aliens, I believe, are Mr. Dasha and Mr. Dira Salali. It's Appellant's position that that conviction cannot stand on two grounds. First, that the two individuals were actually not illegal aliens. They were not in this country illegally at the time. They had been admitted under student visas to attend a 9.3 of the Ninth Circuit's instructions. It states, an alien is not lawfully in this country if the person was not duly admitted by an immigration officer. Well, here, both of them were. They're both at... Suppose a person falls out of status or overstays a visa, then what? Well, that's the difference of opinion between the government and the appellant, right there. It's the government position that the minute, the second a person falls out of status, they become an illegal alien. It's Appellant's position that no, there's a reasonable time for the person to adjust status. The Supreme Court did say in Arizona v. U.S. a person who is here without status is not, as a general rule, an illegal alien. Here, that's in fact what happened. Let me ask you hypotheticals. Suppose somebody's here on a visa, the visa expires January 1st, and you know that the visa has expired January 1st, and on January 15th, you take that person and harbor them. Is that harboring an illegal alien? Well, that would go to the second prong where I think you have to do more than just do that. But I would state that if somebody's here on a visa and the visa date is expired, and they know that, they're here illegally. But that's not what we have here. Here we have, it's almost like that movie Menard. Well, maybe we do, maybe we don't. Do we, Your Honor? To me, it's like that movie Menard report where Mr. Dassa was walking down the street and an immigration officer said to him, you're under arrest for the future crime of being an illegal alien because we're going to prove Tri-Valley is an illegal school. We're going to void their permission to give you that visa, and you're going to be here illegally, but we're going to arrest you today for that. I mean, it was their burden to prove beyond a reasonable doubt that these people were here illegally. Correct. And they apparently offered proof that they had fallen out of status. Now, the jury could buy it or not buy it, but it looks like they bought it. Just like my hypothetical of the guy who overstays the visa. Well, Your Honor, I just think as a matter of law, somebody who overstates the visa has just not become an illegal alien. Unfortunately, apparently, illegal alien is not defined in the federal code in immigration. So we're left with this kind of fuzzy thing. Is this fair notice? Again, I'll go back to my hypothetical, Mr. Dassa walking down the street. Is this fair notice to him that he becomes an illegal alien because there's a problem he may or may not know about at the school he's attending? Until the school's accreditation is taken away, until it's kicked out of the program for legal students coming from a foreign country, those students were here illegally. You look at the facts of this case, it seems that of the many, many students at this university, they were all given the opportunity to adjust their status and stay here and continue their education. So that's the difference of opinion between us and the government. Our position is you don't become an illegal alien if, first, you're falling out of status. That does not automatically equate to being here illegally. Let me ask you, the one that I'm scratching my head over is the money laundering. Can you help me with that one? Your Honor, again, I think we have a stark difference of opinion between us and the government. It's our position that the money laundering does have a problem under Santos, because her withdrawal of the money was directly a central part of the scheme to defraud as charged by the government. She, according to the government, is engaging in a scheme to defraud to make money for herself. She takes the money out. She doesn't intend to hide it, as we would normally think of for money laundering to avoid detection. She takes it out and immediately purchases directly property with it. So that's a central part of the scheme to defraud. According to the government, she's doing this not to run a school, but to make money for herself. Well, if that's so, then taking the money out and purchasing it is a central part of the scheme. It was charged as one of the elements in the scheme to defraud in the indictment that she did this to gain and make personal profit. Well, I understand what they have to prove in a money laundering is that she engaged in a monetary transaction, which I guess she did. She bought whatever she bought, cars, real estate, whatever she bought. Engaged in a monetary transaction. The money was basically ill-gotten gain, criminal property. Exceeded $10,000, which it did, and it was derived from an unlawful activity. If that's all they have to show, isn't your goose cooked on that point? I don't think so, Your Honor, because I think the problem is under these facts, under the way the indictment's worded under Santos, it merged. She could be separately charged with money laundering, or she could be separately charged with a scheme to defraud. But where the money is directly taken out during the scheme to defraud and used to purchase property directly, I feel it merged under Santos. Okay. Perhaps the Rule 33, the motion for the new trial, based on Dr. Su's mental health. This is a motion that I brought before the trial court. It seems troubling that during this trial that was going on, there were increasing episodes in the record of Dr. Su acting inappropriately. The judge noting on the record that she was smiling during the serious court proceedings, because she was on trial for an offense that she can get 16 years for. She's smiling. She's talking loudly. She can't be controlled. And this behavior seems to be increasing in severity as the trial goes along. The government will probably say, you know, the report by Dr. Gregory, hired by the defense, indicates it in there that the doctor found indications of Dr. Su manipulating and trying to make it seem worse than it is. That's absolutely true. But that doesn't stop or doesn't change the fact that Dr. Su had preexisting mental condition for which she was diagnosed with schizophrenia. And that in this case, as the trial progressed, she became increasingly agitated. So the point on, I believe it was March 19th, where early in the morning, 2, 3, 4 in the morning, she sends an e-mail directly to Judge Tiger, including a 2,000-page attachment, which unfortunately the agreement of the parties was deleted instead of preserved for the record. At this point, it seems clear that the doctor was decompensating. Was there a motion at that time for a mistrial or something? There is not. Instead, the parties all seem to be focused on getting through the trial. Well, don't you have, you can't wait to see how the jury comes out and then decide you want to make this motion, can you? No. I don't know if it was done for gaming. But here, it seems trial counsel did not appreciate the severity of the situation. But I believe the judge under Dropey for Missouri, the Supreme Court case, has its own duty to make sure that the person in front of him is competent to stand trial. My prior counsel did not make the motion for the new trial. He did not. The record is clear on that. I did. Judge Tiger found it untimely. I think it can be viewed as timely as newly discovered evidence. What's the new part? What's the newly discovered evidence? That's my problem. Her decompensation at the end of the trial. Because it was a continuum and it just hadn't reached to the level where it sort of rung the bell? Or what's new? Well, I don't think it's a continuum. I think it waxes and wanes. She has problems. She has psychotic incidents in the past. She seemed to be okay during the trial. But at the trial near the end, that's the new part at the end that no one seemed to recognize. And that was the newly discovered part. Right at the end of the trial where apparently trial counsel was, I would say, focused on getting through the trial and preparing his final arguments and I guess blind to the condition of his client, which has gotten steadily worse. Your Honor, before I'll save some minutes, but I wanted to talk about the sentencing. My particularly strong point, I believe, is the district court's loss figure where all the money paid by the students, I believe every single dollar, was lumped into the loss figure. Even though Judge Tiger admitted, it's in the record, I believe, at ER 109, he admitted it's no mystery that many of these students were happy to go to Tri-Valley, were happy not to attend classes so they could get other jobs and work. As he himself said, as Judge Tiger himself said, those people are co-conspirators. Since when are co-conspirators the same as victims in a wire or mail fraud case? Yes, it's visa fraud. There are co-conspirators in that. But the guideline provision here is the fraud provision and these monies paid by willing participants are just lumped in with no effort by the government to try to prove who's a true victim and who's a co-conspirator. Well, of course, the law is that the loss figure doesn't have to be calculated with precision. So how would you have them do that? What would you have had them do, have Judge Tiger do to refine that number? All these victims are known to the government because of the situation where they're F1 students. So would they ask them which of you are happy to be here, which of you got what you paid for? Victim impact statements, interviews, some kind of effort. It's their burden. The judge, it doesn't have to be precise, but it has to be reasonable. And I think it's simply unreasonable to just say, well, we can't do it, so I'm just going to lump everybody in even though I know as I'm sentencing you that some of these numbers, that these numbers are inflated. What was the total loss calculated to be, the dollar amount? More than $2.5 million, are you wrong? What did you calculate it to be? We had nothing to calculate it on. You can't contradict their number? No. The only thing we have is Parth Patel's testimony in the record where he testified that he saw there were two groups of people at the school, those who were happy with the fraud and those who were unhappy, and that the people who seemed to be happy were, I think he said, 60% to 70%, a higher percentage. So I would think the record supports that no more than half of that figure should have been used, and that would reduce it. I'll save the rest. Thank you, Mr. Jordan. May it please the Court. Good morning, Your Honors. Owen Mardekin, arguing for the United States. The district court properly upheld the defendant's convictions for alien harboring, wire fraud, visa fraud, and money laundering in this case, and the district court sentence was not an abuse of discretion. I'd like to talk first about the Rule 29 motion, specifically the alien harboring issue. I think this is really governed by this Court's decisions in Dittal and Ghorbani, where the Court talks about an alien who is not pursuing, particularly in Dittal, a full course of study has fallen out of status. And in Ghorbani, an alien who is not abiding by the F-1 visa rules has violated those rules. So the question is not are they an illegal alien. The question is, under the statute, are they here in violation of law? Once they have violated the law, it's a truism, they're in here in violation of law. I think the evidence is clear that they were not pursuing a full course of study, especially after the first couple days when they realized there was no full course of study to pursue. I think it's a mistake to focus on the school and the school certification because they could have been here to attend Harvard University, but if they weren't pursuing a full course of study, they still would have been here in violation of law. As for the harboring, this is not a case, I don't think we disagree on the law here, that pure employment is not harboring, but this is a case where the defendant specifically forged visa documents in order to make it appear that these students were here illegally, which is just the kind of shielding from detection that 1324 would contemplate. Council didn't talk about the wire fraud and visa fraud issues, but neither of those statutes require that a real victim be charged as an element of that crime. In fact, there were real victims of the fraud scheme. So the wire fraud scheme was actually charged with real victims. It's just the wire itself that doesn't involve a real person. Let me ask you about the money laundering. She took, if I understand your theory correctly, set me straight if I've got this wrong. Yes. She took the ill-gotten gain that she got through this fraudulent university and used it to buy cars, property, and other stuff. Correct. Is that the end of the story? Is that money laundering? Yes. How about if I rob a bank and take the money that I get from the bank and go buy cars and real estate? Is that money laundering? I think you could take, if you take the proceeds of an unlawful activity and try to hide it in certain ways the way she did. Well, you say hide it. I mean, what's the good of stealing money if you can't spend it, you know? It's almost like what would she do to not launder the money under these circumstances? You'd have to, like, leave in the bank account for the non-existent university, right? It seems to me if she does anything with it, under your theory, she's money laundering. Well, the Santos issue, what the defendant is arguing here is a very specific issue, which is whether this is put back into the business because Santos is concerned about whether something is a receipt, meaning a proceed of the crime, because it's pumped back into the business, so it's really an investment in the crime, whereas this isn't. So I don't see the argument that the defense is making here is what happens to the money as long as she doesn't put it back in the business. Does she spend it on property? Does she spend it on cars? I'm just trying to figure out if I, you know, take some money from Judge Kristen's purse, dollars, you know, George Washington Greenbacks, I take that money and I go buy something with it, is that money laundering? Well, people take money and invest it in legal things all the time. Suppose I just go buy a car, I go buy whatever I buy, buy a new stereo, whatever I want. If I just take stolen money and then go buy something with it, is that money laundering? I don't know if it would be in every case, but it could be. Okay, well, here she gets illegal money from this wire fraud. That's how she gets it. She didn't take it from anybody's purse. She perpetrated a wire fraud. And then she takes her ill-gotten gain and she enjoys it. You know, she goes on a trip, she goes, she buys a car, she buys a house. What makes that money laundering? Well, she has taken, I mean, she has taken the proceeds of a specified unlawful activity and she has put it, say, she's used it in a purchase without disclosing, you know, the illegality of the funds. But that goes back to the purse example. Judge Silverman's guilty of theft if he takes money out of my purse, and there isn't any in the purse, but good luck with that. But, right, so he's guilty of theft, but why is it money laundering? Who's he supposed to disclose it to? I don't understand your argument, counsel. Well, if he takes the money, if he takes more than $10,000 and, say, structures it by putting it into his bank account in smaller amounts, that would be tied to the charge of structuring. Yeah. So is that your argument, that it's the amount that she left? Because I'm getting back to what would she do to not money launder in this situation, short of leaving it in the fake university's bank account? Well, I think once she puts it into the system, into the financial system, she is laundering the money. If she had put the money in her bag. So if she moved it at all? If she put it into a legitimate financial, if she takes proceeds from a specified unlawful activity and puts it into the legitimate financial system. Any purchase with stolen money is money laundering under your construct of this? I'm sorry, I didn't hear that first. Any purchase with stolen money is money laundering? Oh, well, I think the purchases here, where you're purchasing land and you're purchasing vehicles, would be, because it's a financial transaction where you have to make disclosures about the money. Buying groceries is a financial transaction. There's got to be something more to your theory than this. Well, she's taking the proceeds of unlawful activity and she, in large amounts, putting it into the financial system without disclosing the source of the funds. I don't see where disclosure is even an element of this. Well, I mean it. If she took the money out of the university and put it under her mattress, she'd be okay? She'd be guilty of the wire fraud, you know, the original theft. But she wouldn't be money laundering, if I'm understanding you correctly. Is that right? Under 1956A1, if she takes, knowing property represents the proceeds, involvement of a financial transaction represents the proceeds of an unlawful activity, conducts a financial transaction which involves the proceeds of the specified unlawful activity with the intent to promote the carrying on of the specified unlawful activity or to engage in conduct constituting a violation of 7206, like a tax law violation. Is it your position that by buying the luxury vehicle and the real estate, she was promoting the ongoing illegal non-existent university? Well, no, but also if she is trying to conceal or disguise the nature, location, source, or ownership or control of the proceeds. That's exactly my point. If she had taken this money and had gone to Las Vegas with it and buy chips and then cashed in the chips to try to conceal where this came from, that to me is classic money laundering. Here she paid herself a salary from this university and took the money that, you know, she got from ripping off these people and she just bought stuff with it. It wasn't any kind of effort to disguise the source of the money. It came from the university as she's president of this fly-by-night university. That's where the money came from. Well, I don't think she—the fact is that the proceeds are from the unlawful activity, okay, not the fact that she's running a university but the fact that she is selling fraudulent visas. Let me ask you, let's suppose we were to, just for the sake of discussion, toss out the money laundering. Does that change anything here in any significant way? Well, only that the—I mean, ultimately no, but in the sense that it's part of the guidelines calculation, you know, it was taken into account. So in terms of what was in the mind of the judge at sentencing, maybe not, but it was part of the guidelines calculation. I'd like to talk—I guess the next step is the Rule 33 motion. She was convicted of 28 counts altogether, right? Thirty-one, I believe. I had 28, but maybe it was 31. And there was one count of money laundering? I think so, yes. Now, if I could talk for a moment about the Rule 33 motion, the psychiatric report. Certainly, it's not new evidence. I mean, this was something that was known to counsel since the beginning of the case. It's something that was discussed at magistrate hearings. And certainly, if it's true that her behavior in a very noticeable way crescendoed during the trial, it was apparent to counsel who could have unless he made some tactical decision not to raise it with the court. And I'd also note that the doctor's report doesn't exactly support this crescendo theory. What the doctor's report is talking about are how events in the past might have been related to other events in the past, meaning her conduct pre-charge as well as perhaps her conduct afterwards. But this idea that everything crescendoed and there's some medical basis for that is not supported by the psychiatrist report. Now, talking about the sentencing issues, the reference is to loss in the guidelines, but it's actually to gain. As the guidelines say that if the loss cannot reasonably be determined, then the court is entitled to rely on gain. And in this case, I don't think it's reasonable to assume that the government could have gone out and interviewed all of these 1,700 students and expected them, you know, some large proportion of them to say, oh, it's true, it was all a fraud. Well, I'm not sure. Just for sake of argument, he's right that you've got the burden, right? True. And why couldn't the government at least have taken some kind of a representative sample to figure out which of these folks essentially got what they paid for? What's wrong with that? First of all, I think it is simplistic for the defendants to argue that it's binary, that it's just people who came here and are pure victims, and it's people who came here as sort of co-fraudsters. I agree, but it's pretty simplistic to say we're going to count it all. That's pretty simplistic, too. No, because her gain is kind of divorced from these people. You only get to use gain if you really can't count the actual loss. Right. Right. I mean, I'm paraphrasing, but you don't get there yet. But, for example, someone could make a tuition payment as a legitimate student, come here, realize this thing is bogus, make another payment when they probably realized this was a bogus scheme, and then made another payment because Ms. Sue threatened to expose them if they didn't make another payment. So how is the court to determine which piece of those payments is an actual loss and which isn't? Did the government make any attempt to figure out what a loss figure would be apart from the entire gain figure? No. I mean, the government did not make that attempt to interview victims or interview a sample. Interviewing was just sort of a – he mentioned that, so I tossed it out, but my question is broader. Did the government take the position that it couldn't calculate the actual loss, and so it was going to go with gain? Is that what happened? Yes. I think the government – well, the government realized, as the court said, that there were a group of students who were completely defrauded, and there were a group of students who maybe thought they got their money's worth in terms of their immigration status, but there are a lot of students who are somewhere in between, and it just couldn't be calculated beyond that. So I – you know, there are a number of other sentencing arguments that the defendant didn't reach in his opening arguments. The grouping rule, I think here, because they're separate victims, is not a problem. The unauthorized use of a computer enhancement because the – was not double-counting because that enhancement had to do with the magnitude of the offense against the government, a governmental victim, as opposed to the fraud, the wire fraud, which had to do with the magnitude of the fraud offense against individual victims. The obstruction of justice count, I think this was a very specific, sophisticated attempt to influence witnesses by telling them exactly how to testify and by using fake e-mails addresses to do so. And the substantive reasonableness of the sentence, I think the court very clearly laid out the reasons for the sentence and, in fact, gave a substantial 96-month variance downwards because of the mental health and other issues relating to the defendant. With respect to the preliminary order of forfeiture, it's true, there was no hearing before the preliminary order of forfeiture was entered. Now, after that, at the sentencing, the court did give the defendant an opportunity to argue about the preliminary order of forfeiture, and the defendant's response was just, well, we just don't agree with the loss calculation. That was their only argument. So I think it would be really an empty requirement to have any other hearing beyond that. They argued the loss amount. I think the defendant was just trying to make a record at that point. So with that, I think that the defendant's conviction and sentencing were proper and would ask the court to affirm. Thank you very much. Mr. Jordan? Judge Silverman, to answer your earlier question, I had the chance to look it up. There were actually, I believe, seven counts of money laundering for which he was convicted. That would be count 26. You're right. I had it as count seven, but you're right. It is seven counts. And your brief says 31. 31 counts for conviction. Okay. And then going to the last thing my opponent just said for the forfeiture, there actually is a real dispute because we also argued to the district court, and we're arguing here today, that the two counts for harboring cannot stand. That's important for the forfeiture because one of the properties, the apartments, the only basis for forfeiture, that would be the Boulder Creek properties. The only basis for the forfeiture put forth by the government is that they were used to harbor the illegal aliens. So if the illegal alien count is thrown out by this court, there's no grounds for that forfeiture. That was a point that the district court, we tried to make to the district court at sentencing, but he had already ruled before sentencing on it, so we couldn't raise that. And then finally, just to go to the grouping, even if there were separate victims under 3B1.2B, I still think this was improperly grouped under subdivision C. We have the same conduct here. We have the same harm. We have the same adjustments used, including 20 levels, I think, group two for visa fraud, which is also included in group one. Without that extra 20 points, you know, the group two wouldn't count. It wouldn't be high enough to count as a separate group, and her sentence would be lower again. Going to Judge Silverman's point on the money laundering and my point on the illegal alien and the grouping, it seems this is a case of overprosecution where the government kept adding things on, adding things on that are either fuzzy or over the edge to the point where this defendant, who has no prior record and has a documented mental health condition, got a 16-year sentence. Let me ask you this. If we were to agree with you about the money laundering, and I'm not saying we will, but if we do, we send it back for recalculation of the guidelines, will that make any appreciable difference? I believe, honestly, it would not change the guideline calculation because they were included in group one, and group one is being driven by that loss amount. That's what gives you the high guideline range there. It might make a difference to the judge if he thought, well, perhaps my view that she laundered money was incorrect, that she just did the one crime, because money laundering is, as Your Honor keeps pointing out, is a separate crime, a further harm to society, and here I just don't think that's made out. It may not make any difference to the sentence. The sentence she got is substantially below the guidelines. It was, Your Honor. Judge Tiger did go down. I do appreciate that. A lot. He went down a lot. He did a lot. But that's from, I believe, an inflated starting point. I understand your argument. Thank you, Your Honor. Thank you both, gentlemen. The case is starting to submit and will stand in recess for today. Thank you.
judges: Duffy, Silverman, Christen